UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:06-CV-04-KSF

WALT SHROPSHIRE                                                                                          PLAINTIFF

vs.                                                    **OPINION AND ORDER**

SKILTON EQUIPMENT CO. INC., as
PLAN ADMINISTRATOR for SKILTON
EQUIPMENT CO, INC. DEFINED BENEFIT
PENSION PLAN                                                                                             DEFENDANT

* * * * * * * *

This matter is before the Court on Plaintiff's Motion to Enter Judgment in the Default of This Matter [DE #15]. Having been fully briefed, this motion is ripe for review.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff worked for Skilton Equipment Co, Inc. ("Skilton") until February 2005 and, during his employment, was a participant in the Skilton Equipment Co., Inc., Defined Benefit Pension Plan ("Plan") [DE #3, ¶¶ 5-7].[1] When Plaintiff ceased his employment with Skilton, he requested Plan benefit information from one of the Plan Trustees, Robert Tri ("Tri") and was told that benefit plan information is usually provided when an employee left the company [DE #18, Ex. 3; Tri Depo. I, pp. 12-13; Tri Depo. II, p. 23]. Skilton was a construction company that ceased business and made its last payroll in April 2005. For the six months preceding April 2005, it had been doing little more than completing existing contracts [Tri Depo. II, p. 35]. When Plaintiff's benefit information was not provided, despite his requests, his attorney send a letter to Tri on December 5, 2005. Tri acknowledged receiving the letter and said he contacted Mr. Schneider, their actuary, to provide the information, but he sensed Schneider would not be in any hurry to respond because Skilton had

---

[1] The allegations of Plaintiff's Amended Complaint are taken as true because Defendant failed to plead or otherwise defend and an Order of Default was entered June 13, 2006.

been slow in paying him [Tri Depo. I, pp. 9-11]. Tri claimed he did not have access to the requested Plan information and admitted that it was not provided to Plaintiff within thirty days as required by statute. *Id.*, p. 11.

Plaintiff filed a Complaint on January 6, 2006 [DE #1] and an Amended Complaint March 10, 2006 [DE #3] seeking information regarding his Plan benefits; all damages, fines, attorney fees and costs for violation of ERISA; and production and transfer of his benefits to an outside account. Skilton never filed a responsive pleading. As a result, an Order of Default was entered against Skilton on June 13, 2006 [DE # 7]. On June 29, 2006, this Court ordered Skilton to "immediately produce the information requested in Plaintiff's December 5, 2005 letter" [DE #9]. Plaintiff was also authorized to conduct discovery. Skilton claims the benefit information was finally received from Schneider on September 27, 2006, and provided to Plaintiff the following day [DE #18, p. 2]. On September 29, 2006, Plaintiff completed an election form to roll his benefits over to another Employer Retirement Plan [DE #18, Ex. G].

Plaintiff now moves for judgment regarding damages pursuant to the default [DE #15]. In addition to his lump sum benefits of approximately $193,873.00 [Tri Depo. I, pp. 20-21; Shropshire Election Form], Plaintiff seeks $26,700 in penalties at the rate of $100 per day for 297 days from December 5, 2005 to September 28, 2006, less the thirty days Skilton had to produce the information, or a total of 267 days. Plaintiff further seeks attorney's fees in the amount of $8,491.50 and costs of $502.00 [DE #21, p. 7].

Through subpoenaed documents and the depositions of two of the Plan Trustees, Joe Mims and Robert Tri, Plaintiff established the following: As of October 31, 2001, assets of the Plan totaled slightly over $1.75 million, including a receivable of $105,088 from Skilton [Tri Depo. II, pp. 6-7], whereas liabilities totaled $2.37 million [*Id.*, p. 8]. In January 2002, Joe Mims, the owner of Skilton, withdrew his full pension benefits of $928,197.20 from the Plan, despite knowing that the plan was underfunded [Mims Depo., 10]. He claimed he put the funds into the company to make payroll and pay bills [*Id.*, p. 11]. In March 2002, Plan benefits were frozen because Skilton could

2

not afford to continue to make contributions [*Id.*, pp. 19-20; Tri Depo. II, p. 19]. By October 31, 2002, the amount Skilton owed the Plan had increased to $219,625 [Tri Depo. II, p. 5]. Between December 2002 and April 2005, additional lump sum disbursements of $707,000 were made from the Plan [Tri Depo. I, p. 34]. On July 11, 2005 Schneider wrote Mr. Mims regarding the Plan's underfunded liabilities and said:

> It appears to me the principals involved have either refused to face these problems or have chosen to ignore them – perhaps thinking they will go away. Of course, they won't go away and will get worse the longer the issue is not addressed.

[DE #21, Ex. D; Tri Depo. II, pp. 34-35]. The Trustees discussed these issues, but took no action because the "wherewithal [to bring the plan current] was not there." [*Id.* at 35]. As Mims explained, the debt to the Plan was not paid "because we had other things that were pressing worse than that. ... [W]e had bills that we had to pay if we wanted to stay in business, materials that we had to pay for, labor we had to pay for." [Mims Depo. p. 12]. In that same July 2005 letter, Schneider provided Mr. Mims "a listing of the lump sum value – updated to 11/01/2004 – for the participants remaining at that point." [DE #21, Ex. D]. In April 2006, Tri prepared a handwritten list of benefits owed to participants who were still part of the plan in April 2006 [Tri Depo. II, pp. 15-16; DE #18, Ex. 8]. The list says that benefits are "as of July 2005" and shows Plaintiff's benefits at $172,638.81. Moreover, Tri admitted that he had possession of documents showing "assets in the plan from October 31, 2001" to the date of his deposition in 2007; fluctuations in the Plan value; and regular reports from the mutual funds holder, Mass Mutual [Tri Depo. I, p. 6]. Thus, Skilton's claim that "the Plan Administrator was not able to timely provide Mr. Shropshire his benefit information because it was in the sole possession of Mr. Schneider, an outside actuary" [DE #18, p. 3] is refuted by the record.

According to Skilton, Plaintiff's request for transfer of his benefits was never processed because the Plan balance following the April 2005 distributions was less than the amount to which he was entitled (balance of $139,066.49 March 31, 2007), "and the Plan documents do not provide for partial lump sum distributions." [DE #18, p. 3]. Skilton also claimed that it had a prior request

3

for lump sum benefits of $155,457.00; however, Skilton was never able to produce a signed copy of any such election request [DE # 18, p. 3; DE #21, Ex. F).  Skilton argued that it could not make a distribution to Shropshire because there were other individuals with potential claims for benefits, but Mr. Tri testified that no one else has requested benefit information or disbursement [Tri Depo. I, p. 39].  Finally, Skilton claims it could not make a disbursement to Shropshire earlier because the Plan was being reviewed by the Pension Benefit Guaranty Corporation ("PBGC") [DE #18, p. 3; Tri Depo. I, p. 22].  Mr. Tri testified, however, that the PBGC did not become involved until April 2006.

## II.   ANALYSIS

ERISA § 502, 29 U.S.C. § 1132(c)(1)(B), provides that:

> Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

The Sixth Circuit supports the disclosure requirement by imposition of penalties for failure to disclose.  "[T]he purpose of the statute was to induce administrators to timely provide participants with requested plan documents, and to penalize failures to do so."  *Bartling v. Fruehauf Corp.,* 29 F.3d 1062, 1068 (6th Cir. 1994).  *Bartling* upheld the imposition of a $25,200 penalty for delay in disclosure, despite the defendant's good faith and the lack of prejudice to the plaintiffs.  *Id.* at 1069.

In *Gatlin v. National Healthcare Corp*, 16 Fed. Appx. 283, 2001 WL 22732 (6th Cir. 2001), the district court assessed a penalty of $15,100[2] for failure to provide plan documents until 151 days after they were requested.  *Id.* at 289.  In response to a claim that the beneficiary suffered no prejudice and that the administrator was acting in good faith, the court said:

---

[2] The penalty was reduced to $12,100 due to improper calculation.

4

> Both of these arguments are unavailing, largely because the language of ERISA indicates that prejudice and the company's good-faith beliefs are not relevant to the company's duty to disclose the plan's terms to the employee.

*Id.* The district court also awarded attorneys' fees, which were affirmed. Pursuant to the foregoing authority, this Court is of the opinion that Plaintiff is entitled to penalties of $26,700 for delay.

In determining whether to award attorney's fees to a beneficiary, the court should consider five, non-dispositive factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*First Trust Corp. v. Bryant*, 410 F.3d 842, 851(6th Cir. 2005) (citing *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 936-37 (6th Cir. 1996)).

In the present case, the culpability of Skilton is clear. It refused to fund adequately its Defined Benefit Pension Plan, despite knowledge that it was underfunded and warnings that the problem would get worse. Joe Mims, owner of Skilton and a Plan Trustee, withdrew his benefits of $928,1997.20 from the plan when he knew it was underfunded. The Trustees discussed the underfunding problems and took no action. Robert Tri, another Plan Trustee failed to provide benefit information to Mr. Shropshire from April 2005 until September 2006, despite the availability of that information. Tri blamed the actuary, Schneider, for the delay, but Tri knew Schneider was not willing to work without being paid. Tri also insisted there was a prior claim to the Plan, but he was unable to provide any proof. It appears the real reason for delay in providing the information was to avoid disclosure that the Plan funds were insufficient to pay Shropshire. Generally, Skilton was less than truthful with Plaintiff throughout the process and during these proceedings.

Regarding the ability to pay, Tri testified that the company does not own any assets and conducts no business, but his credibility has already been badly damaged. Third, other persons under similar circumstances should be deterred from engaging in similar delaying and stonewalling

5

tactics, and an award of attorneys fees would be helpful in that regard. Fourth, Shropshire was not seeking to confer a common benefit to ERISA beneficiaries or participants or resolve a significant legal question. However, his efforts probably will benefit the remaining Skilton Plan participants who have not received their pension benefits.

Finally, there is no question regarding the relative merits of the parties' positions. Skilton did not make a single claim that Shropshire did anything wrong. All Shropshire did was seek the information and benefits to which he was entitled. Skilton, on the other hand, refused to provide required information and hid its culpability, even after being contacted by counsel and after litigation proceeded. In light of all of the foregoing factors and the record herein, this Court is of the opinion that Mr. Shropshire is entitled to an award of attorney's fees in the amount of $8,491.50 and costs of $502.00.

### III.   CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS**:

A.   Plaintiff's Motion for Judgment [DE #15] is hereby **GRANTED**;

B.   Plaintiff is awarded his lump sum benefits of $193,873.00 and any additional benefit amount to which he may be properly entitled;

C.   Plaintiff is awarded his attorney's fees in the amount of $8,491.50 and costs of $502.00;

D.   Judgment consistent with this Opinion and Order shall be entered contemporaneously; and

E.   **THIS ACTION IS DISMISSED AND SHALL BE STRICKEN FROM THE ACTIVE DOCKET**.

This November 30, 2007.



Signed By:

_Karl S. Forester_   KSF

**United States Senior Judge**

6